# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**ANGELA N. MCCLAIN,**

      Plaintiff,

v.                                                     Civil Action No. 3:10-CV-117
                                                               (BAILEY)

**APPLEBEE'S OF VIRGINIA, INC., and
MARK AMBRUTIS,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before this Court are Defendant Mark Ambrutis' Motion to Dismiss [Doc. 7], filed December 6, 2010, and the plaintiff's Motion to Remand [Doc. 9], filed December 21, 2010. The plaintiff responded to the motion to dismiss on December 21, 2010. This Court has reviewed the record and the motions and, for the reasons set out below, finds that the motion to remand should be **GRANTED** and the motion to dismiss should be **DENIED AS MOOT**.

## BACKGROUND

### I. Factual Allegations

This case involves the plaintiff's employment with, and discharge from, an Applebee's restaurant in Martinsburg, West Virginia. According to the Complaint [Doc. 3-1], the plaintiff, a resident of Martinsburg, began working as a server at Applebee's in July 2008 and was promoted to Associate Manager in August 2009. (Id. at ¶¶ 5-6).

During the plaintiff's employment, Applebee's had several policies regarding

1

workplace harassment and discrimination. (Id. at ¶¶ 7-12). For example, Applebee's had a policy against harassment on the basis of race, color, religion, age, national origin, ancestry, sex, sexual orientation, gender, disability, pregnancy, veteran status or other military status, or any other status protected by law. (Id. at ¶ 7). In this regard, Applebee's prohibited acts intended to be jokes or pranks but that are hostile or demeaning with regard to these protected classes. (Id. at ¶ 8). Furthermore, Applebee's prohibited retaliation against anyone for reporting discrimination or harassment and required that any reports of sexual or racial harassment be promptly and thoroughly investigated. (Id. at ¶¶ 9-10). Applebee's had a policy requiring immediate corrective action for any harassment or retaliation for reporting harassment. (Id. at ¶ 11). Finally, Applebee's required an employee who observed sexual or racial harassment to take action immediately. (Id. at ¶ 12).

On three occasions, the plaintiff reported instances of harassment to the general manager of the restaurant, Mark Ambrutis. (Id. at ¶¶ 13-17). On the first occasion, the plaintiff reported that employees had been making racist jokes and repeatedly used terms such as "nigger" and "wetback." (Id. at ¶ 13). In response, Ambrutis told the plaintiff to ignore the jokes. (Id. at ¶ 14). On the next occasion, the plaintiff reported to Ambrutis and Applebee's area manager, Padmal Sirisena, that a female server who had reported sexual harassment was being subjected to retaliation by an associate manager friend of the harassing employee. (Id. at ¶ 15). No action was taken by Ambrutis or Sirisena. (Id. at ¶ 16). On the final occasion, the plaintiff reported that an employee was repeatedly discussing graphic details in the workplace of his sex life. (Id. at ¶ 17). Ambrutis advised that the plaintiff should "just walk away" when that employee begins to discuss sex. (Id.).

On June 15, 2010, the plaintiff met with Sirisena to discuss these and other instances of misconduct occurring at the Martinsburg Applebee's. (Id. at ¶ 18). On the same day, a representative of the human resources department for Applebee's spoke to the plaintiff by telephone and informed her that an investigation would be conducted and that she should wait to be notified of its findings. (Id. at ¶ 19). On July 22, 2010, however, a human resources representative informed the plaintiff that she had been discharged. (Id. at ¶ 20).

II. **Procedural History**

On October 28, 2010, the plaintiff commenced this action in the Circuit Court of Berkeley County, West Virginia, against Applebee's of Virginia, Inc. ("Applebee's") and Ambrutis for unlawful retaliation in violation of the West Virginia Human Rights Act ("WVHRA"), W.Va. Code § 5-11-1, *et seq.* ([Doc. 3-1] at ¶¶ 21-23). Specifically, the plaintiff alleges that the defendants violated the WVHRA by discharging her, in whole or in part, for reporting or opposing racial and sexual harassment and retaliation in the workplace. (Id. at ¶ 25). In this regard, the plaintiff alleges that Ambrutis aided and abetted Applebee's in violating the WVHRA. (Id. at ¶ 24). As a result of the defendants' unlawful conduct, the plaintiff alleges that she suffered humiliation, embarrassment, loss of personal dignity, mental and emotional distress, lost earnings and benefits, and the loss of future anticipated earnings and benefits. (Id. at ¶ 26).

On November 29, 2010, the defendants removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 3]. In particular, the defendants argue that the West Virginia citizenship of Ambrutis should be disregarded because he has been fraudulently joined. ([Doc. 3] at

¶ 11).

On December 6, 2010, Ambrutis moved to dismiss himself from the Complaint [Doc. 7]. In support of dismissal, Ambrutis argues that his lack of authority to terminate the plaintiff's employment precludes any WVHRA claim against him. ([Doc. 8] at 3-4).

On December 21, 2010, the plaintiff filed the instant Motion to Remand [Doc. 9]. In support of remand, the plaintiff argues that she has a possible cause of action against Ambrutis under W.Va. Code § 5-11-9(7)(A) based upon his failure to take action in response to her reports of misconduct, his advice to ignore the misconduct, and his eventual involvement in her discharge as reprisal for her complaints. (Id. at 3). Thus, because the citizenship of Ambrutis should not be disregarded, the plaintiff argues, the lack of complete diversity requires remand. (Id. at 1).

Also on December 21, 2010, the plaintiff filed a Response [Doc. 10] to Ambrutis' motion to dismiss. Though she claims she has pled a plausible claim against Ambrutis, the plaintiff argues that the Court must first address her motion to remand because it involves an issue of subject matter jurisdiction. (Id. at 1). This Court agrees.

## DISCUSSION

I. **Fraudulent Joinder Standard**

"Fraudulent joinder requires neither fraud nor joinder. Rather, it is 'a term of art [which] does not reflect on the integrity of the plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists.' **AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.**, 903 F.2d 1000, 1003 (4th Cir. 1990); *cf.* **Smallwood v. Ill.**

4

***Cent. R. R.***, 385 F.3d 568 (5th Cir. 2004) (adopting term "improper joinder" as more accurate than "fraudulent joinder"). To show that a nondiverse defendant has been fraudulently joined, 'the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts.' [***Mayes v. Rapoport***, 198 F.3d 457, 464 (4th Cir. 1999)]." ***Wygal v. Litton Loan Servicing LP*** 2009 WL 2524701, *2 (S.D. W.Va. Aug. 18, 2009).

"'The party alleging fraudulent joinder bears a burden– it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.' [***Hartley v. CSX Transp.***, 187 F.3d 422, 423 (4th Cir. 1999)]. In fact, the fraudulent joinder standard 'is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).' ***Mayes***, 198 F.3d at 464. Accordingly, '[a] claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted.' ***Marshall v. Manville Sales Corp.***, 6 F.3d 229, 233 (4th Cir. 1993); see also ***Hartley***, 187 F.3d at 426 ("Once the court identifies the glimmer of hope for the plaintiff, the jurisdictional inquiry ends.")." ***Id.*** Finally, "the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." ***Mayes***, 198 F.3d at 464.

**II.** **Analysis**

In their Notice of Removal [Doc. 3], the defendants contend that removal is proper because the plaintiff has fraudulently joined Ambrutis, the only non-diverse defendant. In support of their contention, the defendants argue that, as a matter of law, no claim can be

5

stated against Ambrutis for the plaintiff's discharge because he had no authority to terminate the plaintiff's employment. This Court disagrees.

### A. Liability as Employer vs. Liability as Person

First, to the extent the defendants argue that Ambrutis' lack of discharge authority means he cannot be held liable under the WVHRA because he is not the plaintiff's employer, their argument is misguided. In fact, the Fourth Circuit explicitly rejected that argument in **Marshall v. Manville Sales Corp.**, 6 F.3d 229, 233 (4th Cir. 1993). In **Marshall**, the plaintiff worked at a West Virginia plant where she complained to her plant manager that her salary was not reflective of her job responsibilities or comparable to that of males in similar positions. **Id.** at 230. After neither the plant manager nor the plant took any action to remedy her complaints, the plaintiff sued them both in state court. **Id.** The defendants removed arguing that the plaintiff had fraudulently joined the plant manager. **Id.** The district court dismissed the plant manager because he was not the plaintiff's employer and denied the plaintiff's motion to remand. **Id.** The Fourth Circuit reversed, finding that the district court overlooked the plaintiff's cause of action against the plant manager "as a person" under W.Va. Code § 5-11-9(7)(A). **Id.** at 232. Accordingly, this Court will not find that Ambrutis has been fraudulently joined unless the plaintiff has no possible claim against him as a person.

### B. Causes of Action pursuant to W.Va. Code § 5-11-9(7)(A)

Second, the Court finds that the plaintiff has a possible claim against Ambrutis as a person based upon either his involvement in the plaintiff's discharge or his acquiescence in a hostile work environment. W.Va. Code § 5-11-9(7)(A) provides, in whole, that it is an

6

unlawful discriminatory practice:

> (7) For *any person*, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to:
>
>> (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section[.]

(Emphasis added).

Recently, the Supreme Court of Appeals of West Virginia parsed out the three causes of action arising from W.Va. Code § 5-11-9(7)(A):

> In accordance with the preceding analysis, we now hold that W.Va. Code § 5-11-9(7)(A) (1998) (2006) of the West Virginia Human Rights Act establishes three distinct causes of action. More specifically, pursuant to W.Va. Code § 5-11-9(7)(A), . . . it is an unlawful discriminatory practice for any person . . . to: (1) engage in any form of threats or reprisal, or; (2) engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss[;] or (3) aid, abet, incite, compel, or coerce any person to engage in any of the unlawful discriminatory practices defined in W.Va. Code § 5-11-9.

***Michael v. Appalachian Heating, LLC***, 701 S.E.2d 116, 123 (2010).

Upon careful consideration, this Court finds that the plaintiff has a possibility of a right to relief against Ambrutis under one or more of these causes of action. For example, even assuming Ambrutis had no authority to terminate the plaintiff's employment, it is at least possible discovery could reveal that he "conspired with others" having discharge authority to cause the plaintiff the "economic loss" which would naturally result from discharge. In the same way, discovery could reveal that Ambrutis "aided and abetted" a person having discharge authority to discharge the plaintiff as "reprisal" for her reports to

7

him of racial and sexual harassment.

Another possible cause of action could arise from the manner in which Ambrutis handled the plaintiff's reports of racial and sexual harassment. By either advising the plaintiff to ignore the harassment or failing to respond at all, Ambrutis could be found to have "aided and abetted" a hostile environment of racial or sexual harassment. *See e.g.,* Syl. pt. 7, **Hanlon v. Chambers**, 195 W.Va. 99, 464 S.E.2d 741 (1995) (finding that "[a]n employee could state a claim for hostile environment sexual harassment if unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature have the purpose or effect of unreasonably interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment.").

Each of these possible causes of action represent a glimmer of hope for the plaintiff to obtain relief against Ambrutis. In the context of fraudulent joinder, that finding is dispositive. *See* **Hartley v. CSX Transp.**, 187 F.3d 422, 426 (4th Cir. 1999) ("Once the court identifies the glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). As such, this Court finds that the plaintiff has a possible claim against Ambrutis, and thus, that his citizenship should not be disregarded. As a result, this Court lacks subject matter jurisdiction, as neither complete diversity nor a federal question is present. Accordingly, the plaintiff's motion to remand should be **GRANTED**. Based upon this ruling, Ambrutis' motion to dismiss should be **DENIED AS MOOT**.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the plaintiffs' Motion to Remand **[Doc. 9]** should be, and hereby is, **GRANTED**. As such, Defendant Mark Ambrutis' Motion

to Dismiss **[Doc. 7]** should be, and hereby is, **DENIED AS MOOT**. Accordingly, the Court **REMANDS** this case to the Circuit Court of Berkeley County, West Virginia.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record and transmit a copy to the Circuit Court of Berkeley County, West Virginia.

**DATED:** December 30, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE